# UNITED STATES DISTRICT COURT EASTERN DISTRICT OF WISCONSIN

U.S. District Court
Wisconsin Eastern

MAR 1 2 2026

FILED
Clerk of Court

KEVIN KOVACIC,

Plaintiff,

v.　　　　　　　　　　Case No. 1:25-cv-00993-NJ

TROOPER K. POWELL, et al.,

Defendants.

## PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE MARCH 6, 2026 ORDER (DOCKET #40) - IFP

Plaintiff Kevin Kovacic, appearing pro se and In Forma Pauperis (IFP), respectfully moves this Court to reconsider its Decision and Order dated March 6, 2026 (Docket #40). This motion is brought to correct manifest errors of fact and law which resulted in the disregard of forensic surveillance evidence, the inadvertent suppression of a high-ranking official's (undersheriff) digital signature from 8:26 pm in the flock system and a fundamental denial of Plaintiff's right to be heard under the Due Process Clause of the Fourteenth Amendment.

## I. THE 600-SECOND PHYSICAL AND LEGAL IMPOSSIBILITY

Plaintiff filed a Supplemental Declaration and Exhibit A (Docket #39) on March 6, 2026, at 2:31 PM. This filing contained the "smoking gun" of this entire litigation: government-certified Agency Logs proving a manual surveillance hunt by high-ranking local law enforcement at 8:26 PM on April 15, 2025, while the Plaintiff was passing through that jurisdiction. The Court's Order (Docket #40) was entered at 2:41 PM.

It is a physical and procedural impossibility for any human being, including the Court, to have downloaded, opened, verified ,analyzed, and weighed forensic surveillance logs— and then incorporated those findings into a comprehensive 8-page Decision—within 600 seconds. Plaintiff respectfully submits that an inadvertent timing overlap occurred. The March 6 Order (Docket #40) contains zero mention of the Agency Logs or the 8:26 PM timestamp. In the Seventh Circuit, a court abuses its discretion when it "fails to consider a factor that should have been given significant weight." *In re Stericycle Sec. Litig.*, 35 F.4th 555, 559 (7th Cir. 2022). By omitting the digital signature of a high-ranking official, the Court's finding of "no facts" (Order at 6) is a manifest error. Reconsideration is mandatory to correct a "clear factual misunderstanding." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

## II. THE "ROUNDABOUT" INFRASTRUCTURE: HOW THE 100-MILE HUNT WORKS

The Court ruled it was "unclear" how Defendant Powell acquired awareness of a local agency search at 8:26 PM. Because of the ever changing technological infrastructure of the State of Wisconsin, Plaintiff provides the following explanation of the 100-mile hunt: which is now documented.

**The Digital Trigger** At 8:26 PM, a manual search of Plate AAW8001 was performed in the FLOCK CAMERA SYSTEM by high-ranking local authorities. (Undersheriff of Marinette county) while the plaintiff was passing through that jurisdiction. Under Wisconsin State Patrol (WSP) Policy 4-3 (March 2025), this manual entry into the network constitutes the creation of a "Hot List" or "BOLO" be on the lookout for , target. This data is instantly synced with the State Patrol's own ALPR cameras located at every weigh station tripwire along the I-41 corridor.

**The Abrams Tripwire (Mile 185):** As Plaintiff drove south from the initial point of acquisition, he passed the Abrams SWEF (Safety and Weight Enforcement Facility). These stationary, mounted ALPR cameras automatically matched his plate against the 8:26 PM "Hot List" entry updated by the agency of origin as the Plaintiff was driving through their jurisdiction.

**The Wrightstown Tripwire (Mile 153):** Thirty miles later, Plaintiff passed the Wrightstown SWEF. Under Policy 4-3, Section 5.A.4, this stationary tripwire automatically broadcast a real-time audible and visual alert directly to Trooper Powell's in-car Axon dashboard.

**The Mandatory Alert Confirmation:** Wisconsin state patrol Policy 4-3 (March 2025) requires that officers "shall confirm all alerts". Meaning that he was required to locate the plaintiffs vehicle because it was entered into the system at 8:26 PM as a vehicle of interest in the FLOCK ALPR camera system. Trooper Powell did not "stumble" onto the Plaintiff; his dashboard ordered him to find the vehicle. His admitted 7-mile tailgate in an unrecognizable, low-profile Dodge Durango was the confirmation of the digital alert his car received as the Plaintiff passed the weigh stations. To call this a "conspiracy" or "futile" is to ignore the physical cameras bolted to the highway and the on-duty law enforcement officers who sit next to them all night long. If the on duty state patrol officers who sit next to these cameras on the interstate aren't alerted to the vehicles of interest that have been flagged by local Sheriff departments in the flock camera system, what is the point of having these Flock ALPR cameras at all? There have been multiple high profile incidents of Wisconsin law-enforcement misusing these cameras just this month. The general public is very suspicious of these flock cameras and the state patrol willingly and knowingly released a false statement in 2026 that deceived the general public on how they use these highway camera systems, denying that they use them at all. To call absolute proof that there was a hot list alert placed on the Plaintiff's vehicle a conspiracy theory, is not appropriate.

## III. THE DECEPTION OF THE "NO FLOCK" NARRATIVE

The State Patrol has publicly claimed to the citizens of Wisconsin in 2026 that they do not use "Flock" cameras. They are duping the public. They use the data in a "roundabout" way by integrating local entries into the SWEF ALPR network. Just because they don't own an operate the cameras doesn't mean they don't utilize them. It is a 100% technical certainty that Trooper Powell was notified of the actions of the initiating agency. Any claim to the contrary is a documented falsehood and likely perjury, intended to hide a coordinated retaliatory hunt. The state patrol is using local sheriff department "hits" and "alerts" along the interstate alpr camera systems to perform state-level interceptions. In discovery my research led me to that website that showed with absolute certainty that our vehicle was most definitely being tracked down the interstate the night trooper Powell pulled us over. Plaintiff is simply trying to consolidate valid claims to save the courts time. I was under the impression that I had a duty to try to consolidate claims whenever possible to respect the value of the courts time and resources, by not filing multiple separate lawsuits that could have been combined into one.

## IV. THE MOTIVE: ACTUAL KNOWLEDGE OF INNOCENCE SINCE 2022

The Court must reconsider this evidence in light of Judge Griesbach's February 9, 2026 Order (*Kovacic v. Oconto County*, 23-CV-642, Docket #172), which affirmed:

**Undisputed Innocence:** Plaintiff is a factually and undisputed innocent hemp farmer, who's seized hemp products from the 5/20/22 oconto county/NETCDEG drug interdiction, were all returned in late 2022 after being tested and verified as legal, establishing actual knowledge of innocence of the kovacics and their legal cannabis products and their fully licensed business, WAUTOMA CANNABIS QUEEN LLC, for all members of law enforcement in Wisconsin.

**The Interdiction Failure:** "Traditional drug interdiction methods" are failing in the age of legal hemp. According to Judge Greisbach January 2026. Trooper Powell admitted in his report that the occupants "appeared to be legal hemp farmers" in possession of a "large quantity of legal hemp." This constitutes an admission that Powell was alerted and directed to the vehicle by the surveillance network (FLOCK/SWEF), rather than a random traffic violation. Following a single vehicle on the interstate for 10 miles and exiting the interstate with that vehicle, hoping to uncover a traffic violation, is not random.

**The Retaliatory Pattern:** Participating members of the NETCDEG Task Force(Northeast Tri-County Drug Enforcement Group) seized the Plaintiffs on May 20, 2022, in oconto county resulting in Kevin being jailed for three days(Friday to Monday). Their inaugural crop was seized and held until it was worthless before being returned by Oconto County Lieutenant Eric Thomson in late 2022. No charges were ever filed for the Oconto drug interdiction from 2022. **Conclusion of Retaliation:** This proves that the agencies actively broadcasting the Plaintiffs as "criminals" had actual knowledge for three years that all WAUTOMA CANNABIS QUEEN LLC products were legal. Because they knew the Plaintiff was an innocent farmer, the 100-mile coordinated hunt on 4/15/25 is First Amendment Retaliation. *Hartman v. Moore*, 547 U.S. 250, 256 (2006); see also *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643 (7th Cir. 2013).

## V. CONCLUSION

Plaintiff respectfully requests the Court vacate the March 6 Order to correct the manifest oversight of Docket #39. Justice requires that the court acknowledge these digital logs which undisputedly show that the Plaintiff's vehicle was being tracked across 100 miles on 4/15/25. For no reason other than First Amendment retaliation, to punish plaintiff for exercising his constitutional rights stemming from a wrongful arrest in Oconto county in 2022.

Dated: March 11, 2026.

Respectfully submitted,

X _Kevin Kovacic_

_____

**Kevin Kovacic, Pro Se**
**IFP**